# EXHIBIT A

```
                                                    ENDORSED
                                                    FILED
                                                    San Francisco County Superior Court

                                                    OCT -2 2015

                                                    CLERK OF THE COURT
 1  William Audet, SBN 117456                       BY:____RONNIE OTERO
    Mark E. Burton, SBN 178400                                    Deputy Clerk
 2  AUDET & PARTNERS, LLP
 3  221 Main St #1460,                                          -2 2015
    San Francisco, CA 94105
 4  Telephone: (415) 982-1776
 5  Facsimile:
                                                                           Deputy Clerk
 6
    Timothy J. Walton, SBN 184292
 7  Jim Twu, SBN 175032
    WALTON TWU LLP
 8  9515 Soquel Drive, Suite 207
 9  Aptos, CA 95003-4137
    Phone (831) 685-9800
10  Fax: (650) 618-8687
11
    Attorneys for Plaintiff and the Proposed Class
12
13
               SUPERIOR COURT OF THE STATE OF CALIFORNIA
14
                    FOR THE COUNTY OF SAN FRANCISCO
15
                           UNLIMITED JURISDICTION
16
    WILLIAM SILVERSTEIN, individually and  ) Case No. CGC 15 548263
17  on behalf of all other California residents )
18  similarly situated,                    )
                                           ) CLASS ACTION COMPLAINT FOR
19             Plaintiffs,                 ) VIOLATIONS OF CALIFORNIA
                                           ) RESTRICTIONS ON UNSOLICITED
20      v.                                 ) COMMERCIAL E-MAIL (Cal. Bus. &
21                                         ) Prof. Code § 17529.5)
    KEYNETICS INC., a Delaware corporation, )
22  CLICK SALES INC., a Delaware corporation, )
23  418 Media LLC, an Ohio Limited Liability )
    Company,                               ) JURY TRIAL DEMANDED
24  and                                    )
25  DOES 1-100,                            )
                                           )  BY FAX
26
               Defendants.
27
28
29
30
31
                                      1
                          CLASS ACTION COMPLAINT
```

## I. NATURE OF THE ACTION

1. This class action arises out of Keynetics Inc. ("Keynetics") and Click Sales Inc. ("Click Sales") advertising in unlawful Unsolicited Commercial Emails ("spams") that violate Section 17529.5 of the California Business & Professions Code.

2. Plaintiff is informed and believes and thereon alleges that Keynetics owns and operates Clickbank, an online store and a pay-per-sale affiliate program. Plaintiff is informed and believes and thereon alleges that Keynetics engages numerous third party advertising networks and affiliates (also known as "publishers") to advertise for it. Plaintiff is informed and believes and thereon alleges that some of these affiliates send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them. Many of the emails include false and/or misrepresented content (including From Names that misrepresent *who* is advertising in the messages and *when* the emails were sent), sent from domains without the domain owner's permission, and From Email Addresses containing domain names registered so as to not be readily traceable to the sender. Keynetics is strictly liable for the actions of its networks and affiliates.

3. Plaintiff William Silverstein brings this class action to recover statutory liquidated damages on behalf of himself as well as on behalf of a class defined as *"All California residents who received unsolicited commercial emails via the LinkedIn group "C, Linux Networking Group" where the emails advertised* linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com, *and the emails contained false and/or misrepresented information contained in or accompanying the email headers, and/or misleading subject lines, within four years prior to the filing of this Action or after the filing of this Action,"* with certain exclusions as described *infra*. Plaintiff and the Class seek damages, equitable relief, attorneys' fees and costs pursuant to statute.

## II. PARTIES

4. William Silverstein ("Silverstein") is an individual who is a resident of the State of California and receives email on a computer located within California. Silverstein received unlawful email advertising ("spams") linking to web pages at *linkedinfluence.com paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and

*getcashforsurveys.com* because of his membership in the LinkedIn group "C, Linux Networking Group". Silverstein did not give consent to Keynetics or Click Sales to send him commercial email advertising.

5.  Plaintiff is informed and believes and thereon alleges that Defendant Keynetic, Inc. is, and was at all relevant times, a Delaware corporation headquartered in and doing business in Boise, Idaho. The web pages for *paidsurveyauthority.com, getcashforsurveys.com, takesurveysforcash.com* state "ClickBank is the retailer of products on this site. CLICKBANK® is a registered trademark of Click Sales, Inc., a Delaware corporation".

6.  Plaintiff is informed and believes and thereon alleges that Click Sales Inc. is a Delaware Corporation and a wholly owned subsidiary of Keynetics.

7.  Plaintiff is informed and believes and thereon alleges that 418 Media LLC owns the domain name and operates the web site located at linkedinfluence.com.

8.  Plaintiff is informed and believes and thereon alleges that 418 Media LLC is an Ohio Limited Liability Company located in West Hollywood, California.

9.  Plaintiff is informed and believes and thereon alleges that the emails advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and *getcashforsurveys.com* contain links that go through *clickbank.net*, which is owned and operated by Click Sales, Inc.

10. The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants and/or their alter egos named herein as DOES 1 through 100 inclusive are presently unknown to Plaintiffs at this time, and are therefore sued by such fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiffs will amend this Complaint to allege the true names and capacities of DOES 1 through 100 when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that DOES 1 through 100 do business in California by advertising in and sending spams advertising *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* or *getcashforsurveys.com* to California email addresses, but may or may not be authorized to do business in California. Plaintiffs are further informed and believe and thereon allege that DOES 1 through 100 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events, happenings, and damages hereinafter set forth below.

11. Plaintiffs are informed and believe and thereon allege that the Defendants were not required in any way to work together but that they chose to do so in pursuit of monies, and that the fictitious Doe Defendants were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers of each other, and that all acts alleged herein occurred within the course and scope of said agency, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants Keynetics and Click Sales; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

12. All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## III. JURISDICTION

13. This Court has jurisdiction over the Action because this is a class action in which the emails were sent from servers in California and California residents received the emails.

## IV. THE UNLAWFUL SPAMS

**A.  The Emails at Issue are "Spams"**

14. Plaintiff received the spams at their California electronic mail addresses.

15. The spam shown in Exhibit A, attached, is a representative sample.

16. The emails at issue are "commercial email advertisements"[1] because they advertise paid survey products sold by Keynetics at linkedinfluence.com, *paidsurveyauthority.com*, *takesurveysforcash.com*, *click4surveys.com*, and *getcashforsurveys.com* web sites. The emails

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

are "unsolicited commercial email advertisements"[2] because no Plaintiff ever gave Keynetics "direct consent"[3] to send him or her commercial emails, nor did any Plaintiff have a "preexisting or current business relationship"[4] with Keynetics or Click Sales.

### B. Spams Containing Third Parties' Domain Names Without Their Permission Violate Business & Professions Code § 17529.5(a)(1)

17. Business & Professions Code § 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

18. Defendants took advantage of a social network's automated email communication feature and this resulted in a violation of California law.

19. All of the spams at issue were sent from the domain *linkedin.com*. This domain belongs to LinkedIn Corporation, a business-oriented social networking service located in Mountain View, California. These spams violate LinkedIn's user agreement, which prohibits "post[ing] any unsolicited or unauthorized advertising, 'junk mail,' 'spam,' 'chain letters,' 'pyramid schemes,' or any other form of solicitation unauthorized by LinkedIn." Plaintiff is informed and believes and thereon alleges that LinkedIn did not authorize the use of its domain in the email messages at issue in this action.

### C. Generic From Names Misrepresent *Who* is Advertising in the Spams and Violate Business & Professions Code § 17529.5(a)(2)

---

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

20. Business & Professions Code § 17529.5(a)(2) prohibits misrepresented information in email headers.

21. Plaintiffs are informed and believe and thereon allege that the text in the "From Name" field (part of the email headers) in the instant spams is misrepresented.

22. Plaintiffs do not insist on any *particular* label (*e.g.*, "Keynetics," "Clickbank," "Clicksales" "PaidSurveyAuthority.com," etc.) in the From Name field. Rather, Plaintiffs contend that the text, whatever it is, cannot misrepresent *who* is advertising in the email. The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and date. Therefore, even if the body of the email identifies the advertiser, the recipient will not know that until s/he has already clicked to open the email.

23. Here, the From Names all misrepresent *who* is advertising in the spams.

24. Silverstein received at least 47 spams from June 30, 2015 - August 16, 2015 advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com* with a variety of From Names.

25. Plaintiffs are informed and believe and thereon allege that all the members of the LinkedIn "C, Linux and Networking" Group have received spams advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com* with various falsified or misrepresented From Names including, but not limited to: "Whitney Spence," "Ariella Rosales," "Nona Paine," "Gracelynn Ho," "Elinor Francois," "JANET Noah," "Isabel Donahue ," "Flora Sam ," "Jamila Trejo," or "MEAGAN Zachery".

26. None of the From Names identify Keynetics, Click Sales, or ClickBank, *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, or getcashforsurveys.com*. All of the From Names misrepresent *who* is advertising in the spams, because they falsely state who is actually sending or advertising in the spams.

27. In *Balsam v. Trancos Inc. et al*, the Court of Appeal of the First District affirmed in all respects the trial court's statement of decision. 203 Cal. App. 4th 1083, 1088 (1st Dist. 2012). The court confirmed that generic From Names that "do not exist or are otherwise misrepresented [when they] do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute, even when the advertiser's true address appears in the body of

the email. The court affirmed the award of $1,000 liquidated damages per spam for the spams with From Names "Paid Survey," "Your Business," "Christian Dating," "Your Promotion," "Bank Wire Transfer Available," "Dating Generic,' and "Join Elite," but *not* "eHarmony" (because it identified eHarmony). *Id.* at 1093.

28. The false From Names "C, Linux Networking," "Whitney Spence," "Ariella Rosales," "Nona Paine," "Gracelynn Ho," "Elinor Francois," "JANET Noah," "Isabel Donahue ," "Flora Sam ," "Jamila Trejo," "MEAGAN Zachery," (as well as others) are as generic as "Christian Dating" from the *Trancos* case, adjudged to be unlawful by the trial court and affirmed by the court of appeal.

29. Because all of the From Names misrepresent that the spams are really advertising Defendants' products at *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com* web sites, the spams all violate Business & Professions Code § 17529.5(a)(2).

D. **Sending Domain Names Registered So As To Not Be Readily Traceable to the Sender Violate Business & Professions Code § 17529.5(a)(2)**

30. Business & Professions Code § 17529.5(a)(2) prohibits misrepresented information contained in or accompanying email headers. In the *Trancos* case, the Court of Appeal held:

> [W]here, as in this case, the commercial e-mailer intentionally uses . . . domain names in its headers that neither disclose the true sender's identity on their face nor permit the recipient to readily identify the sender, . . . such header information *is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity. . . .
>
> Here, the domain names were *not* traceable to the actual sender. The header information is "falsified" or "misrepresented" because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message. . . . an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos.
>
> Allowing commercial e-mailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse-- the very evils for which the Legislature found it necessary to regulate such e-mails when it passed the Anti-spam Law.
>
> We therefore hold, consistent with the trial court's ruling, that header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS.

*Trancos*, 203 Cal. App. 4th at 1097-1101 (emphasis in original).

31. Plaintiffs are informed and believe and thereon allege that LinkedIn was not the actual sender of the emails. The email advertising was initiated by Defendants, and LinkedIn acted only as an email service provider.

### E. Plaintiffs Sue for Statutory Liquidated Damages

32. Plaintiffs were injured as the result of receiving unlawful spams advertising Defendants' web sites. *See* Bus. & Prof. Code § 17529(d), (e), (g), (h).

33. Business & Professions Code § 17529.5 does not require Plaintiffs to quantify their actual damages, or to allege or prove reliance on the advertisements contained in the spams.

34. The California Legislature defined liquidated damages to be $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

35. Plaintiffs are informed and believe and thereon allege that this figure is comparable with damages in other areas of consumer protection law, *e.g.*, $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b) and 47 U.S.C. §227 *et seq*.

36. Plaintiffs' rightful and lawful assertion of the California Legislature's liquidated damages amount of $1,000 per email is necessary to further the Legislature's objective of protecting California residents from unlawful spam.

37. Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Business & Professions Code § 17529.5.

38. Even if Defendants had any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

39. Plaintiffs are informed and believe and thereon allege that the false and deceptive elements of these spams represent willful acts, not clerical errors.

### F. Defendants Are Strictly Liable for Spams Sent By Affiliates

40. Advertisers are strictly liable for advertising in spams, regardless of whether the advertiser knew that the spams were sent, and even if contracted third parties hit the Send button.

> There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore.

8

**CLASS ACTION COMPLAINT**

> The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements.

Bus. & Prof. Code § 17529(j), (k).

41. No one forced Defendants to outsource advertising to third party spammers, and in *Hypertouch Inc. v. ValueClick Inc. et al*, the court held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third parties.

> [S]ection 17529.5 makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient.

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added).  The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute:

> [I]mposing strict liability on the advertisers who benefit from (and are the ultimate cause of) deceptive e-mails, forces those entities to take a more active role in supervising the complex web of affiliates who are promoting their products.

*Id.* at 829.  *Hypertouch* was not an anomaly; it confirmed the general trend in anti-spam litigation in California and federal courts.

## V. CLASS ACTION ALLEGATIONS

42. Plaintiffs bring this class action for statutory liquidated damages on behalf of the following Class:

> *All members of the LinkedIn group "C, Linux Networking" who are California residents and who received unsolicited commercial emails sent from the domain linkedin.com advertising web sites at paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com with unauthorized sending domains and/or false or misrepresented information contained in or accompanying the email headers, within one year prior to the filing of this Action or after the filing of this Action.*

43. Excluded from the Class are:

- Defendants' officers, directors, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.
- Any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

44. **Numerosity.** As of August 6, 2015, there were at least 19,268 in the LinkedIn "C, Linux Networking" group. The proposed Class is so numerous that individual joinder of all its members is impractical. Plaintiffs believes that members of the Class are numerous and geographically dispersed across California, the United States and possibly the world. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

45. **Commonality.** There is a well-defined community of interest in the questions of law and fact involved affecting the Class and these common questions predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

   a. Did Class members receive unsolicited commercial emails advertising Keynetic's products at *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com*, meaning that they: 1) never gave direct consent to Keynetics to send them commercial email, and 2) had no preexisting or current business relationship with Keynetics or Click Sales?

   b. Are Keynetics and Click Sales liable for the actions of affiliates who sent unlawful spams advertising *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and/or *getcashforsurveys.com*?

   c. Are the email headers materially deceptive?

   d. Did the Defendants have permission to send unsolicited commercial email from LinkedIn's email servers?

   e. e-mails sent to all the class members and the materially deceptive analysis would be the same for each of the individual emails.

   f. have Defendants established and implemented, with due care, practices and procedures reasonably designed to effectively prevent advertising in unlawful spam?

46. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since they all received unlawful spams advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and/or *getcashforsurveys.com.*

47. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiffs has no interests adverse to that of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation and with prosecuting actions related to unlawful spamming. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.

48. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice. Adjudication of individual class members' claims with respect to the Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

## V. COMMON ALLEGATIONS

49. Each of the emails contains a link to a web page which belongs to Click Sales without revealing to the recipient that it belongs to Click Sales.

50. The aforementioned page belonging to Click Sales immediately directs the recipient to an advertising web site located at one of the following domains: *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* or *getcashforsurveys.com.*

51. To order from one of the aforementioned domain names, the email recipient is directed back to Click Sales' web site to make payment.

### FIRST CAUSE OF ACTION
**[Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5]**
**(Against All Defendants)**

52. Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

53. Defendants advertised in unlawful *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and/or *getcashforsurveys.com* spams sent to the email addresses of Plaintiffs and other class members sent from email servers in California.

54. Each and every spam had materially misrepresented and deceptive information contained in or accompanying the headers in violation of Business & Professions Code § 17529.5, due to the use of misrepresented From Names and/or From Email Addresses containing domain names registered so as to not be readily traceable to the sender.

55. Plaintiffs were injured as the result of receiving unlawful spams advertising Defendants' web sites. Bus. & Prof. Code § 17529(d), (e), (g), (h).

56. The California Legislature set liquidated damages at $1,000 per email that violates the statute. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

57. Defendants are not entitled to any reduction in liquidated damages because Defendants cannot demonstrate that they have reasonably effective systems in place to prevent the sending of unlawful spam in violation of the statute.

58. Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Business & Professions Code § 17529.5(b)(1)(C).

59. The attorneys' fees provision for a prevailing plaintiff is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial

burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

### PRAYER FOR RELIEF
### (Jointly and Severally Against All Defendants)

60. Wherefore, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

61. Certification of the proposed Class and notice thereto to be paid by Keynetics and/or Click Sales;

62. Adjudge and decree that Defendants have engaged in the conduct alleged herein;

63. For liquidated damages of $1,000 per unlawful email message pursuant to Business & Professions Code § 17529.5(b)(1)(B)(ii);

64. For attorneys' fees pursuant to Business & Professions Code § 17529.5(b)(1)(C) and/or California Code of Civil Procedure 1021.5;

65. Appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not necessarily limited to an order enjoining Defendants and others acting in concert with them from continuing their unlawful policies and practices;

66. For costs, and pre-judgment and post-judgment interest; and

67. For any and all such other and further relief that this Court may deem just and proper.

WALTON TWU LLP

Date: September 30, 2015        BY: _____
                                Timothy Walton
                                *Attorneys for Plaintiff and the Proposed Class*

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

WALTON TWU LLP

Date: September 30, 2015        BY: _____
                                Timothy Walton
                                *Attorneys for Plaintiff and the Proposed Class*