United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM SILVERSTEIN,
Plaintiff,

v.

KEYNETICS INC., et al.,
Defendants.

Case No. 16-cv-00684-DMR

**ORDER ON MOTIONS TO DISMISS**

Re: Dkt. Nos. 6, 13

Defendants 418 Media LLC ("418 Media) and Lewis Howes, and specially appearing Defendants Keynetics, Inc. ("Keynetics") and Click Sales, Inc. ("Click Sales), separately move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2) to dismiss Plaintiff William Silverstein's amended complaint. [Docket Nos. 6, 13.] The court ordered the parties to file supplemental briefing on the motions, which the parties timely filed. [Docket Nos. 34-36.] The court held a hearing on April 28, 2016. For the following reasons, Defendants' motions to dismiss are granted because Plaintiff's claims for relief are preempted by federal law.

## I. BACKGROUND

The following facts are taken from the allegations in Plaintiff's amended complaint, and are assumed to be true for purposes of this motion.[1]

Plaintiff brings this putative class action alleging violations of California's restrictions on unsolicited commercial email. Plaintiff is a member of the group "C, Linux and Networking Group" on LinkedIn, a professional networking website. FAC ¶ 4. Through his membership in that group, he received unlawful commercial emails ("spam" emails) that came from fictitiously

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

named senders through the LinkedIn group email system. The emails were sent from the domain "linkedin.com," even though non-party LinkedIn did not authorize the use of its domain, and was not the actual sender of the emails. *Id*. at ¶¶ 30, 42.

The bodies of the emails contain links to web pages at linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com. *Id*. at ¶ 4. Plaintiff alleges upon information and belief that these links "go through clickbank.net," which is owned and operated by Click Sales, and that Click Sales is a wholly owned subsidiary of Keynetics. *Id*. at ¶¶ 6, 14. He also alleges upon information and belief that 418 Media owns the domain name linkedinfluence.com, and that Doe 2 is Lewis Howes, an individual who owns and operates 418 Media. *Id*. at ¶ 12.

Plaintiff alleges that the information in the "from" name field in the email headers falsely states who is actually sending or advertising in the spam emails. *Id*. at ¶¶ 32, 34. For example, the "from" names include "Liana Christian," "Whitney Spence," "Ariella Rosales," and "Nona Paine," none of whom are the true senders of the emails. Moreover, the "from" names do not identify the web page links contained in the bodies of the emails, nor do they appear to be associated with any of the Defendants. *Id*. at ¶¶ 36, 37.

Plaintiff attached an exemplar email to his amended complaint. It contains the following email header information:

| | |
|---|---|
| From: | "Liana Christian" <groups-noreply@linkedin.com> |
| Subject: | [New discussion] How a newbie banked $5K THIS WEEK…What Nobody Told You About |
| Date: | Sat, July 11, 2015 1:22 am |
| To: | "William Silverstein" <linkedin.com@[redacted]> |

*Id*. at ¶ 26, Ex. A. The body of the email contains a web link. *Id*. Plaintiff received at least 86 spam emails from July 6, 2015 to November 17, 2015 advertising linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com, all of which had falsified or misrepresented "from" names in their headers. *Id*. at ¶¶ 35, 36.

Plaintiff asserts one claim for violation of California Business and Professions Code section 17529.5, which prohibits certain unlawful activities related to commercial email

United States District Court
Northern District of California

advertisements. He seeks liquidated damages of $1,000 per unlawful email message, as well as attorneys' fees and costs. *Id.* at ¶¶ 65-71. Defendants 418 Media and Howes move pursuant to Rule 12(b)(6) to dismiss Plaintiff's amended complaint on three grounds: 1) Plaintiff's section 17529.5 claims are preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7701-7713; 2) the amended complaint is not pled with the requisite specificity; and 3) Plaintiff does not plead specific facts regarding Howes's liability. Defendants Keynetics and Click Sales join in 418 Media and Howes's motion to dismiss on the ground of federal preemption. [Docket No. 13 at 8.] Keynetics and Click Sales also move pursuant to Rule 12(b)(6) for failure to state a claim against Keynetics, and pursuant to Rule 12(b)(2) to dismiss Plaintiff's amended complaint for lack of personal jurisdiction.[2]

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

[2] As discussed below, the court dismisses Plaintiff's claims as preempted pursuant to Rule 12(b)(6). Therefore, it does not reach Defendants' remaining arguments, including Keynetics and Click Sales's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III. DISCUSSION

### A. Preemption

California Business and Professions Code section 17529.5 governs unsolicited commercial email. It provides that it is unlawful for a person or entity "to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:"

> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
>
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information.[3] This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.
>
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Cal. Bus. & Prof. Code § 17529.5(a). Plaintiff alleges that the emails at issue violate section 17529.5(a)(1) because they were sent from the linkedin.com domain, even though LinkedIn did not authorize the use of its domain and was not the actual sender of the emails. FAC at ¶¶ 30, 42. He alleges that the emails violate section 17529(a)(2) because the "from" names misrepresent who is advertising in the emails and who sent the emails. *Id.* at ¶¶ 32-34, 37, 41, 42.

All Defendants move to dismiss on the ground that Plaintiff's section 17529.5 claims are preempted by the federal CAN-SPAM Act. The CAN-SPAM Act contains an express preemption

---

[3] The California statute does not define the term "header information." In *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 340 n.5 (2010), the California Supreme Court applied the CAN-SPAM Act's definition of header information, which is "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." (citing 15 U.S.C. § 7702(8)).

United States District Court
Northern District of California

United States District Court
Northern District of California

provision which provides as follows:

> **(1) In general.** This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except* to the extent that any such statute, regulation, or rule prohibits *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto.
>
> **(2) State law not specific to electronic mail.** This chapter shall not be construed to preempt the applicability of—
>
> > **(A)** State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or
> >
> > **(B)** other State laws to the extent that those laws relate to acts of fraud or computer crime.

15 U.S.C. § 7707(b) (emphasis added).

The Ninth Circuit has interpreted the CAN-SPAM Act's preemption clause as "broadly preempt[ing] state regulation of commercial e-mail with limited, narrow exception. Congress carved out from preemption state laws that proscribe 'falsity or deception' in commercial e-mail communications." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1061 (9th Cir. 2009).

Defendants make two preemption arguments. First, they assert that Plaintiff's claims are preempted to the extent they challenge the fact that the names in the "from" field misrepresent the actual email advertisers. Such claims do not address false or deceptive information, and instead amount to a "content or labeling requirement." *See Gordon*, 575 F.3d at 1064. Defendants also argue that any challenge to the fact that the emails violated LinkedIn's user agreement is preempted, because breach of a user agreement is not a deceptive practice. Defs.' Mot. at 7-8.

In *Gordon*, the Ninth Circuit held that the CAN-SPAM Act's exception from preemption for laws prohibiting "falsity" and "deception" refers to "'traditionally tortious or wrongful conduct.'" 575 F.3d at 1062 (citing *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)). Thus, in order to satisfy the preemption exception, the false or deceptive information in a commercial email must be material. *Id*. In reaching this conclusion, the Ninth Circuit agreed with the Fourth Circuit's reasoning in *Omega* that "Congress could not have intended, by way of the carve-out language, to allow states to enact laws that prohibit 'mere

United States District Court
Northern District of California

error' or 'insignificant inaccuracies' . . . 'because allowing a state to attach liability to bare immaterial error in commercial e-mails would be inconsistent with the federal Act's preemption text and structure.'" *Id*. at 1061 (quoting *Omega*, 469 F.3d at 354-55). Therefore, in order to prevail on a state law claim alleging false or deceptive header information in a commercial email and avoid CAN-SPAM Act preemption, a plaintiff must be able to demonstrate that the header information violates the state statute and contains *material* misrepresentations. *See Wagner v. Spire Vision LLC*, No. C 13-04952 WHA, 2015 WL 876514, at *3 (N.D. Cal. Feb. 27, 2015); *Asis Internet Services v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *4 (N.D. Cal. April 20, 2010) ("In *Gordon*, the Ninth Circuit clearly held that falsity and deception as used in the CAN-SPAM preemption provision require that a misrepresentation be material.").

After interpreting the CAN-SPAM Act's preemption clause, the Ninth Circuit in *Gordon* reviewed the district court's conclusion that the plaintiff's state law claim was preempted. The plaintiff in *Gordon* argued that the defendant violated Washington's Commercial Electronic Mail Act ("CEMA") by sending emails with header information that misrepresented the senders' identity.[4] Defendant, a company called Virtumundo, sent emails from addresses such as "CriminalJustice@vm-mail.com," "PublicSafetyDegrees@vmadmin.com," and "TradeIn@vm-mail.com." *Gordon*, 575 F.3d at 1063. Although the *Gordon* plaintiff conceded that he was not misled or deceived by the information in the "from" lines, he nevertheless argued that "the headers . . . violate[d] CEMA because they fail[ed] to clearly identify Virtumundo as the e-mails' sender and therefore misrepresent[ed] or obscure[d] the identity of the sender." *Id*.

The Ninth Circuit affirmed, finding that the plaintiff's claim was for "incomplete or less than comprehensive information regarding the [identify of the email] sender." *Id*. at 1064. Such actions do not amount to "falsity or deception" under the CAN-SPAM Act because "[t]here is of course nothing inherently deceptive in [defendant's] use of fanciful domain names." *Id*. at 1063.

[4] The plaintiff in *Gordon* alleged the defendant violated a provision of CEMA that prohibited the transmission of a commercial electronic email message that "[u]ses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message." *Gordon*, 575 F.3d at 1057 (citing Wash. Rev. Code § 19.190.020(1)(a)).

The court noted (and the plaintiff conceded) that the domain registrant could readily be identified by using a "reverse-look-up" database. *Id.* at 1064. The court concluded that the plaintiff's "technical allegations regarding the header information [found] no basis in traditional tort theories," and therefore were preempted. *Id*. at 1064.

The *Gordon* plaintiff broadly argued that a spam emailer's attempt to obscure the identity of the sender amounts to actionable, non-preempted deception. Thus, according to the plaintiff, "the only information that could be used in the 'from name' field that would not misrepresent is the name of the 'person or entity who actually sent the e-mail, or perhaps . . . the person or entity who hired the [sender] to send the email on their behalf." *Id*. at 1064 (second alteration in original). The court rejected this theory. It held that "[t]he CAN-SPAM Act does not impose such a requirement," and found that "[t]o the extent such a content or labeling requirement may exist under state law, it is clearly subject to preemption." *Id*. (citing S. Rep. No. 108-102, at 21-22 ("State law requiring some or all commercial e-mail to carry specific types of labels . . . or contain specified content, would be preempted.")); *see also Kleffman v. Vonage Holdings Corp*., No. CV 07-2406GAFJWJX, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007) (dismissing section 17529.5(a)(2) claim based on falsified headers, holding "the claim that the failure to include [defendant's] name in the email is clearly preempted." (citing S. Rep. No. 108-102, at 21-22)).[5]

Here, Plaintiff alleges that the information in the email headers is deceptive because it "misrepresents *who* is advertising in the email." FAC ¶ 33; *see also* FAC ¶¶ 34, 37, 40. Plaintiff asserts that the header information is deceptive in two ways. First, he contends that the sender names (e.g., "Liana Christian") are fictitious and false. Second, Plaintiff asserts that the actual

[5] The Ninth Circuit in *Gordon* did not analyze whether the state statute was itself preempted by the CAN-SPAM Act; instead, it determined preemption by examining the particular claims brought under the statute. Other courts have followed this approach. For example, in *Asis Internet Services v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066, at *4 (N.D. Cal. April 20, 2010), the court dismissed as preempted a claim that it found "amounted to the same allegations that the plaintiff in *Gordon* made: that the header information was deceptive because it did not clearly identify [the defendant] as the sender." *See also Kleffman*, 2007 WL 1518650, at *3 n.1 (finding the plaintiff's authorities "unpersuasive, as they merely compared the language of the statutes at issue to the savings clause, as opposed to examining the nature of the plaintiffs' theory of liability.").

senders further hid their identities by using the linkedin.com domain to send the emails, thereby "hijacking" LinkedIn's goodwill.

Plaintiff's claim amounts to the same preempted allegations made in *Gordon*; i.e., that the header information is deceptive because it does not clearly identify either the email sender or the entity advertising in the body of the email. *See Gordon*, 575 F.3d at 1063. To be sure, Plaintiff's allegations differ from those made in *Gordon*. In *Gordon*, the plaintiff challenged the defendant's use of domain names that did not clearly identify defendant Virtumundo as the emails' sender, such as "vmmail.com," "vmadmin.com," "vtarget.com," and "vmlocal.com." *Id*. at 1064. Here, Plaintiff alleges that the email headers include "false or misrepresented" sender names, (e.g., "Liana Christian"), separate and apart from the domain name (i.e., "linkedin.com"). Plaintiff claims that this practice is particularly deceptive because the emails misappropriate LinkedIn's goodwill, as they are sent through the linkedin.com domain without permission.

This is a difference without a distinction. The gravamen of Plaintiff's claim is identical to the theory that the Ninth Circuit has already rejected. Plaintiff alleges that the emails are deceptive because the headers do not reveal "*who* is advertising in the email." FAC ¶¶ 33, 34. Plaintiff does not claim that the email headers contain fraudulent information. For example, he does not allege that "Liana Christian" is an actual person, and that the email sender masqueraded as her, thereby misappropriating her identity.[6] Plaintiff also does not allege that the headers were deceptive because the emails *appeared to come* from the linkedin.com domain, for, as Plaintiff concedes, all of the emails *did come* from the linkedin.com domain. The alleged violation of LinkedIn's user agreement might amount to a breach of contract, but the headers do not falsely or deceptively misrepresent the domain from which the emails actually traveled.

Plaintiff also does not allege that the header information deceived him into believing that the email was not commercial in nature,[7] or that he could not identify the true sender. In fact, like

[6] This practice is known as "email spoofing," by which "the header of an e-mail appears to have originated from someone or somewhere other than the actual source." Dep't of Justice News Release, "FBI Says Web 'Spoofing' Scams Are a Growing Problem" (July 21, 2003) 2003 WL 21692056 (D.O.J.).

[7] It is unlikely Plaintiff could plausibly allege that he was deceived, given the clearly commercial

the plaintiff in *Gordon*, Plaintiff admits that he was able to ascertain the true sender, and acknowledges that all of the emails at issue advertised the same five websites.[8]

Accordingly, the court concludes that the headers at issue in this case are not meaningfully different from the headers at issue in *Gordon*, which the Ninth Circuit held did not "rise[] to the level of 'falsity or deception' within the meaning of the CAN-SPAM Act's preemption clause." *See Gordon*, 575 F.3d at 1064.

*Gordon* is the governing Ninth Circuit precedent on the issue of CAN-SPAM Act preemption. Unfortunately, Plaintiff did not address or distinguish *Gordon* in his opposition brief,[9] and Defendants did not discuss *Gordon* at length in their submissions. Accordingly, before the hearing, the court ordered the parties to submit supplemental briefing addressing, among other things, the applicability of *Gordon* to this case. [Docket No. 33.] In his supplemental brief, Plaintiff distinguishes *Gordon* on the basis that it examined preemption of Washington state law, not section 17529.5. This is not a persuasive distinction. Plaintiff also argues that *Gordon* did not

---

subject line of the exemplar email: "How a newbie banked $5K THIS WEEK…What Nobody Told You About."

[8] To the extent that Plaintiff contends that the "from" field must include the names of the entities advertising in the emails, that is precisely the type of content or labeling requirement that the Ninth Circuit has held to be "clearly subject to preemption." *Gordon*, 575 F.3d at 1064.

[9] In his opposition, Plaintiff cites a number of cases in which district courts addressed whether a plaintiff seeking relief under section 17529.5 must allege and prove all of the elements of common law fraud, including reliance and damages, in order to satisfy the CAN-SPAM Act's preemption exception. *See, e.g.*, *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-3 (N.D. Cal. March 3, 2014); *Asis Internet Servs. v. Vistaprint USA, Inc*., 617 F. Supp. 2d 989, 992-94 (N.D. Cal. 2009); *Hoang v. Reunion.com*, No. C-08-3518 MMC, 2010 WL 1340535, at *4-6 (N.D. Cal. March 31, 2010); *Asis Internet Servs. v. Subscriberbase Inc*., No. 09-3503 SC, 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009). These cases are inapposite because they did not address the issue before this court; specifically, whether the allegations of falsity or deception rise to the level required to escape preemption under *Gordon*.

It is not clear why Plaintiff cited these cases, as Defendants do not contend that Plaintiff's claims are preempted because he failed to allege reliance and damages. However, the court notes that 418 Media and Howes improperly made this argument for the first time in their supplemental brief. [*See* Docket No. 34.] The court will not consider arguments raised for the first time on reply. *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

address the precise issue here, which involves Defendants' alleged deception by sending emails through LinkedIn without permission. However, as analyzed above, the factual differences between *Gordon* and this case do not support a different outcome.

Rather than attempt to grapple meaningfully with *Gordon*, Plaintiff relies primarily on *Balsam v. Trancos, Inc*., 203 Cal. App. 4th 1083 (2012). That case is distinguishable. In *Balsam*, the court held that "header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." *Id*. at 1101 (emphasis in original). The *Balsam* defendant explicitly conceded that it deliberately hid its identity "behind an impenetrable shield of made-up [domain] names." 203 Cal. App. 4th at 1099. The court concluded that the plaintiff's claims were not preempted by the CAN-SPAM Act because the defendant's "deliberate use of randomly chosen, untraceable domain names . . . for the stated purpose of concealing its role in sending them" involved "deception as to a material matter—the sender's identity—as well as an element of wrongful conduct." *Id*. at 1102-03.[10]

Unlike the plaintiff in *Balsam*, Plaintiff does not allege that the headers of the emails at issue contained false and untraceable domain names. He admits that all were sent from linkedin.com, a readily identifiable domain. Plaintiff also does not allege that he could not determine the actual email senders; to the contrary, he alleges that the emails contained links to five web pages operated by Defendants. FAC ¶¶ 4, 27, 36.

Finally, at oral argument Plaintiff appeared to contend that the emails were deceptive because he was required to open them in order to determine the identity of the actual senders. The California Court of Appeal has rejected this argument. In *Balsam*, the court based its ruling on the fact that the sender deliberately used untraceable domain names. But the court explicitly "express[ed] no judgment about other circumstances in which . . . the presence of other

[10] As Plaintiff relies so heavily on *Balsam*, it is important to note that *Balsam* did not address the fact that the Ninth Circuit had held that the CAN-SPAM Act preempts any state law requirement that the actual sender be identified in a commercial email header. *See Gordon*, 575 F.3d at 1064.

information identifying the sender in the body of the e-mail could affect liability under the statute." 203 Cal. App. 4th at 1101 n.17. Two years after *Balsam* was decided, the California Court of Appeal in *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407 (2014), held that "a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the e-mail, or merely because it does not identify an entity whose domain name is traceable from an online database, *provided the sender's identity is readily ascertainable from the body of the e-mail*." (emphasis added). *See also Wagner*, 2015 WL 876514, at *4-5 (granting summary judgment on 17529.5(a)(2) claim because emails in question "provided a hyperlink to the advertiser's website, an unsubscribe link, and a mailing address for the sender. The sender's identity could thus be readily ascertained from the bodies of the emails."). Here, Plaintiff admits that the bodies of the emails readily reveal the identity of the senders. Accordingly, Plaintiff's claim that he was required to open the emails in order to determine their senders is not actionable.

In sum, the court concludes that as in *Gordon*, Plaintiff's "alleged header deficiencies relate to, at most, non-deceptive statements or omissions and a heightened content or labeling requirement." *See Gordon*, 575 F.3d at 1064. They are accordingly preempted by the CAN-SPAM Act. The court therefore need not reach Defendants' remaining arguments.

**B. Leave to Amend**

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires." In general, valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Plaintiff's sole claim is for violation of section 17529.5. While the court has serious doubts about Plaintiff's ability to plead his claims to escape federal preemption, it cannot categorically state that Plaintiff's claims are futile. Accordingly, Plaintiff is granted leave to amend the complaint.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed as preempted. Plaintiff may file an amended complaint in conformance with this order within 14 days of the date of this order. The June 29, 2016 case management conference is CONTINUED to August 31, 2016, with the

parties' joint CMC statement due by August 24, 2016.

**IT IS SO ORDERED.**

Dated: June 27, 2016

UNITED STATES DISTRICT COURT
IT IS SO ORDERED
Judge Donna M. Ryu
NORTHERN DISTRICT OF CALIFORNIA

Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

12