William Audet, SBN 117456
Mark E. Burton, SBN 178400
**AUDET & PARTNERS, LLP**
221 Main St #1460,
San Francisco, CA 94105
Telephone: (415) 982-1776

Timothy J. Walton, SBN 184292
Jim Twu, SBN 175032
**WALTON TWU LLP**
9515 Soquel Drive, Suite 207
Aptos, CA 95003-4137
Phone (831) 685-9800
Fax: (650) 618-8687

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WILLIAM SILVERSTEIN, individually and on behalf of all other California residents similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KEYNETICS INC., a Delaware corporation, CLICK SALES INC., a Delaware corporation, 418 MEDIA LLC, an Ohio limited liability company, INSPIRED MARKETING, LLC, an Ohio limited liability company, LEWIS HOWES, an individual, SEAN MALARKEY, an individual, and DOES 3-100, <br><br> Defendants. | Case No.: 4:16-CV-00684 <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL EMAIL** (Cal. Bus. & Prof. Code § 17529.5) <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

**1**

## I. <u>NATURE OF THE ACTION</u>

1.     This class action arises out of Keynetics Inc. and Click Sales Inc. advertising in unlawful Unsolicited Commercial Emails ("spams") that violate Section 17529.5 of the California Business & Professions Code. Keynetics and Click Sales work together for mutual profit. Keynetics Inc. and Click Sales Inc. are hereinafter referred to as "Keynetics".

2.     Plaintiff is informed and believes and thereon alleges that Keynetics owns and operates Clickbank, an online store and a pay-per-sale affiliate program. Plaintiff is informed and believes and thereon alleges that Keynetics engages numerous third party advertising networks and affiliates (also known as "publishers") to advertise for it. Plaintiff is informed and believes and thereon alleges that some of these affiliates send millions of unwanted and unlawful commercial email messages to recipients that did not give consent to receive them. Those affiliates/publishers are hereinafter referred to as "Senders"[1]. Many of the emails from lines include false senders and/or deceptive content (including From Names that deceive recipients about the sender of the messages and about the sender), sent from domains without the domain owner's permission, and with false and/or deceptive From Names. Keynetics is strictly liable for the actions of its networks and affiliates.

3.     Plaintiff William Silverstein brings this class action to recover statutory liquidated damages on behalf of himself as well as on behalf of a class defined as *"All California residents who received unsolicited commercial emails via the LinkedIn group "C, Linux and Networking" where the emails advertised linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and *getcashforsurveys.com, and the emails contained false and/or misrepresented information contained in or accompanying the email headers, and/or misleading subject lines, within one year prior to the filing of this Action or after the filing of this Action,"* with certain exclusions as described *infra.* Plaintiff and the Class seek damages, equitable relief, attorneys' fees and costs pursuant to statute.

---

[1] *See* 15 U.S. Code § 7702(9)(defining "initiate") *and* California Business & Professions Code §17529.5(b)(1)(D)(making clear that LinkedIn, Inc. is not a Sender).

SECOND AMENDED CLASS ACTION COMPLAINT

## II. PARTIES

4.     William Silverstein ("Silverstein") is an individual who is a resident of the State of California and receives email on a computer located within California.  Silverstein received unlawful email advertising ("spams") linking to web pages at *linkedinfluence.com paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and *getcashforsurveys.com* because of his membership in the LinkedIn group "C, Linux and Networking Group".  Silverstein did not give consent to Keynetics to send him commercial email advertising.

5.     Plaintiff is informed and believes and thereon alleges that Defendant Keynetics, Inc. is, and was at all relevant times, a Delaware corporation headquartered in and doing business in Boise, Idaho.  The web pages for *paidsurveyauthority.com, getcashforsurveys.com, takesurveysforcash.com* state "ClickBank is the retailer of products on this site. CLICKBANK® is a registered trademark of Click Sales, Inc., a Delaware corporation".

6.     Plaintiff is informed and believes and thereon alleges that Defendant Click Sales Inc. is a Delaware Corporation and a wholly owned subsidiary of Keynetics, Inc.

7.     Plaintiff is informed and believes and thereon alleges that 418 Media LLC owns the domain name *linkedinfluence.com.*

8.     Plaintiff is informed and believes and thereon alleges that 418 Media LLC is an Ohio limited liability company located in West Hollywood, California.

9.     Plaintiff is informed and believes and thereon alleges that Inspired Marketing, LLC products are sold by Keynetics at the web site located at http://www.linkedinfluence.com.

10.     Plaintiff is informed and believes and thereon alleges that Inspired Marketing, LLC created and operates the web site at http://www.linkedinfluence.com.

11.     Plaintiff is informed and believes and thereon alleges that Inspired Marketing, LLC is an Ohio limited liability company located in Santa Barbara, California.

12.     Plaintiff is informed and believes and thereon alleges that Lewis Howes is an individual residing in California who owns and operates 418 Media LLC.

13.     Plaintiff is informed and believes and thereon alleges that Sean Malarkey is an individual residing in Ohio who owns and operates Inspired Marketing, LLC.

14.     Plaintiff is informed and believes and thereon alleges that the emails advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and

SECOND AMENDED CLASS ACTION COMPLAINT

1   *getcashforsurveys.com* contain links that go through *clickbank.net*, which is owned and operated

2   by Click Sales, Inc. Plaintiff is informed and believes and thereon alleges that Keynetics operates

3   *clickbank.net.* Such operations are hereafter referred to as "ClickBank".

4   15.    Plaintiff is informed and believes and thereon alleges that ClickBank contracts with

5   affiliates to promote digital products at ClickBank's website where customers access ClickBank

6   and download their products.

7   16.    Plaintiff is informed and believes and thereon alleges that ClickBank collects payment

8   and, in turn, pays the vendors for each product sold.

9   17.    Plaintiff is informed and believes and thereon alleges that ClickBank pays a commission

10  to its affiliates for each sale that results from their email advertising.

11  18.    Plaintiff is informed and believes and thereon alleges that ClickBank requires any of its

12  vendors to allow ClickBank to list their product in ClickBank's catalog and make it available for

13  purchase by retail consumers.

14  19.    Plaintiff is informed and believes and thereon alleges that ClickBank reserves the right to

15  adjust the final retail price (including any applicable sales tax) of any product of its vendors.

16  20.    Plaintiff is informed and believes and thereon alleges that ClickBank reserves the right to

17  delist any product from its catalog at any time, without cause or notice.

18  21.    The true names and capacities, whether individual, corporate, associate, representative,

19  alter ego or otherwise, of defendants and/or their alter egos named herein as DOES 3 through

20  100 inclusive are presently unknown to Plaintiffs at this time, and are therefore sued by such

21  fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiffs will amend this

22  Complaint to allege the true names and capacities of DOES 3 through 100 when the same have

23  been ascertained.  Plaintiffs are informed and believe and thereon allege that DOES 3 through

24  100 do business in California by advertising in and sending spams advertising

25  *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* or *getcashforsurveys.com*

26  to California email addresses, but may or may not be authorized to do business in California.

27  Plaintiffs are further informed and believe and thereon allege that DOES 3 through 100 were

28  and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events,

29  happenings, and damages hereinafter set forth below. At least one and perhaps all of the DOES 3

30  through 100 are Senders.

31

SECOND AMENDED CLASS ACTION COMPLAINT

22.     Plaintiffs are informed and believe and thereon allege that the Defendants were not required in any way to work together but that they chose to do so in pursuit of monies, and that the fictitious Doe Defendants were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers of each other, and that all acts alleged herein occurred within the course and scope of said agency, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants Keynetics Inc. and Click Sales Inc.; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

23.     All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## III. JURISDICTION

24.     This Court has jurisdiction over the Action because this is a class action in which the emails were sent from servers in California and California residents received the emails.

## IV. THE UNLAWFUL SPAMS

### A.     The Emails at Issue are "Spams"

25.     Plaintiff received the spams at their California electronic mail addresses.

26.     The printed email shown in Exhibit A, attached, is a representative sample of the emails at issue in this Action.

27.     The emails at issue are "commercial email advertisements"[2] because they advertise products sold by Keynetics at *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and *getcashforsurveys.com* web sites. The emails

---

[2] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

are "unsolicited commercial email advertisements"[3] because no Plaintiff ever gave any Defendant "direct consent"[4] to send him or her commercial emails, nor did any Plaintiff have a "preexisting or current business relationship"[5] with any Defendant.

**B.** **Spams Containing Third Parties' Domain Names Without Their Permission Violate Business & Professions Code § 17529.5(a)(1)**

28.    Business & Professions Code § 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

29.    Defendants took advantage of a social network's automated email communication feature and this resulted in a violation of California law.

30.    All of the spams at issue originated from the domain *linkedin.com.* This domain belongs to LinkedIn Corporation ("LinkedIn"), a business-oriented social networking service located in Mountain View, California. LinkedIn was not a Sender. 15 U.S. Code § 7702(9); California Business & Professions Code §17529.5(b)(1)(D).  These spams violate LinkedIn's user agreement, which prohibits "post[ing] any unsolicited or unauthorized advertising, 'junk mail,' 'spam,' 'chain letters,' 'pyramid schemes,' or any other form of solicitation unauthorized by LinkedIn." Plaintiffs are informed and believe and thereon allege that LinkedIn did not authorize any Defendant to use its service for the purpose of sending the unsolicited commercial email at issue in this action.

31.    This is a material violation, the very purpose of Section 17529 subsection (a)(1).

---

[3] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[4] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[5] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

SECOND AMENDED CLASS ACTION COMPLAINT

**C.   False From Names Deceive Recipients of the Spams and Violate Business & Professions Code § 17529.5(a)(2)**

32.   Business & Professions Code § 17529.5(a)(2) prohibits false and/or deceptive information in email headers.

33.   Plaintiffs are informed and believe and thereon allege that the text in the From Name headers in the instant spams are false and/or deceptive.

34.   Plaintiffs do not insist on any *particular* label in the From Name field.  Rather, Plaintiffs contend that the text, whatever it is, cannot be false or deceptive.  The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and date. Therefore, even if the body of the email identifies the advertiser, the recipient will not know that until s/he has already opened the email.

35.   Plaintiffs are informed and believe and thereon allege that the From Names all the From Names were false.

36.   Silverstein received at least 103 spams with a variety of From Names from July 6, 2015 to July 3, 2015, advertising web sites at the domains *linkedinfluence.com*, *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and *getcashforsurveys.com.*

37.   Plaintiffs are informed and believe and thereon allege that all the members of the LinkedIn "C, Linux and Networking" Group have received spams advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and *getcashforsurveys.com* with various false From Names including, but not limited to: "Whitney Spence," "Ariella Rosales," "Nona Paine," "Gracelynn Ho," "Elinor Francois," "JANET Noah," "Isabel Donahue ," "Flora Sam ," "Jamila Trejo," "MEAGAN Zachery" etc.

38.   Defendants chose to insert a false name into the email header in an attempt to trick the recipient into opening the email.

39.   Plaintiffs are informed and believe and thereon allege that none of the From Names identify any real person associated with any Defendant.  All of the From Names are deceptive about the actual Senders and Plaintiff remains unaware of the identities of the actual Senders. Defendants have not disclosed the identities of the Senders, who remain DOES.

40.   Defendants, as of July 11, 2016, have failed to state the name of any person who sent any of the emails at issue in this action.

41.     Defendants, as of July 11, 2016, have failed to provide any information about any person associated with the From Names.

42.     The bodies of the emails do not identify the Senders of the emails.

43.     In *Balsam v. Trancos Inc. et al*, the Court of Appeal of the First District affirmed in all respects the trial court's statement of decision.  203 Cal. App. 4th 1083, 1088 (1st Dist. 2012). The court confirmed that generic From Names that "do not exist or are otherwise misrepresented [when they] do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute, even when the advertiser's true address appears in the body of the email.  The court affirmed the award of $1,000 liquidated damages per spam for the spams with From Names "Paid Survey," "Your Business," "Christian Dating," "Your Promotion," "Bank Wire Transfer Available," "Dating Generic,' and "Join Elite," but *not* "eHarmony" (because it identified eHarmony). *Id.* at 1093.

44.     Like the Balsam senders, the Senders in the instant Action conceal their true identities by using the LinkedIn service. Plaintiffs are informed and believe and thereon allege that there is no way to determine the Senders through WHOIS or through any other source other than Defendants and perhaps LinkedIn.

45.     The false From Names "Whitney Spence," "Ariella Rosales," "Nona Paine," "Gracelynn Ho," "Elinor Francois," "JANET Noah," "Isabel Donahue ," "Flora Sam ," "Jamila Trejo," "MEAGAN Zachery," etc., are worse than "Christian Dating" from the *Trancos* case, and therefore material violations of California law, because the instant emails claim to be from actual people. People join LinkedIn to meet people.

46.     Because all of the From Names deceive recipients into believing that personal connection could be made instead of a pitch for Defendants' products at *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com* web sites, the spams all violate Business & Professions Code § 17529.5(a)(2).

47.     The From Names are not generic, but falsely claim to be from real people.

**D.     Deceptive Headers Violate Business & Professions Code § 17529.5(a)(2)**

48.     Business & Professions Code § 17529.5(a)(2) prohibits deceptive information contained in or accompanying email headers.  In the *Trancos* case, the Court of Appeal held:

> [W]here, as in this case, the commercial e-mailer intentionally uses . . . domain names in its headers that neither disclose the true sender's identity on their face nor permit the recipient to readily identify the sender, . . . such header information

*is* deceptive and *does* constitute a falsification or misrepresentation of the sender's identity. . . .

Here, the domain names were *not* traceable to the actual sender. The header information is "falsified" or "misrepresented" because Trancos deliberately created it to prevent the recipient from identifying who actually sent the message. . . . . an e-mail with a made-up *and untraceable* domain name affirmatively *and falsely* represents the sender has no connection to Trancos.

Allowing commercial e-mailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse-- the very evils for which the Legislature found it necessary to regulate such e-mails when it passed the Anti-spam Law.

We therefore hold, consistent with the trial court's ruling, that header information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS.

*Trancos*, 203 Cal. App. 4th at 1097-1101 (emphasis in original).

49.     Plaintiffs are informed and believe and thereon allege that LinkedIn was not the actual initiator of the emails. The email advertising was initiated by Defendants, and LinkedIn acted only as an email service provider. 15 U.S. Code § 7702(9); California Business & Professions Code §17529.5(b)(1)(D).

50.     The From Names are not "mere error" or "insignificant inaccuracies". Plaintiffs are informed and believe and thereon allege that Senders chose these names purposefully, with the intent to deceive.

**E.      The Emails Are Materially False and Deceptive Under CAN-SPAM**

51.     The federal CAN-SPAM Act, 15 U.S.C. §§ 7701 *et seq.*, 18 U.S.C. § 1037 *et seq.* ("CAN-SPAM") sets the national standard for what constitutes "materially false or materially misleading header information". *Gordon v. Virtumundo* 575 F. 3d 1040, 1062-63 (9th Cir. 2009); *Hypertouch, Inc. v. ValueClick, Inc.* 192 Cal. App. 4th 805, 829 (2011); *Kleffman v. Vonage Holdings Corp.* 49 Cal. 4th 334, 340 fn. 5 (2010). If header information is materially false or deceptive under CAN-SPAM, then those headers are materially false or deceptive under California Business & Professions Code 17529.5.

SECOND AMENDED CLASS ACTION COMPLAINT

52.     Header information is materially false or materially misleading under Section 7704(a)(1) where the From Name is designed to hide the true identity of the sender. Senders chose to use LinkedIn's service so that they could send email that would not contain any return address, or any address anywhere in the email, that would allow a recipient to respond to Senders. Thus, the return address is deceptive because the Senders hijacked LinkedIn's service.

53.     "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading."  15 U.S.C. § 7704(a)(1)(A). Plaintiffs are informed and believe and thereon allege that Senders obtained access to LinkedIn's service, and thus its electronic email address, domain name and/or Internet Protocol address(es), by means of false or fraudulent pretenses or representations.

54.     An email violates CAN-SPAM Section 7704(a)(1)(A) where the domain used to send the email was registered (i.e. obtained) or used for a purpose that violates the domain owner's terms of service. Plaintiffs are informed and believe and thereon allege the use of LinkedIn's domain to send these emails violated LinkedIn's terms of service.

55.     An email sent from such a domain violates the law regardless of whether the email contains a header that is technically accurate. *Id.*

56.     Plaintiffs are informed and believe and thereon allege that all of the emails in question originated from sender domains registered or used for purposes that violate the domain owner's terms of service, despite the fact that the registration and use of the domain was a representation that such use would be consistent with the terms of service.

57.     Plaintiffs are informed and believe and thereon allege that DOE Defendants registered LinkedIn accounts by means of false or fraudulent pretenses or representations through the use of false names and contact information and false representations that they would abide by LinkedIn's terms of service.

58.     All of the emails identified above violate § 7704(a)(1)(A) as set forth herein.

59.     Under CAN-SPAM, the text or body of an email cannot cure misrepresentations in the header information. In *Facebook v. Power Ventures, Inc.* (N.D. Cal. February 16, 2012) No. C 08-05780 JW *12-14 (Order Granting Plaintiff's Summary Judgment and Denying Defendant's Summary Judgment):

Defendants contend that even if the Court finds that they did initiate the emails at issue, they cannot be held liable for violations of the CAN-SPAM Act on the grounds that: (1) the text of the emails itself includes information about Power.com; and (2) Defendants had no control over the headers of the emails. The Court finds that both of these contentions are unavailing. First, the presence of a misleading header in an email is, in and of itself, a violation of the CAN-SPAM Act, insofar as the Act prohibits the use of misleading header information. Thus, the fact that the text of the emails at issue may have included information about Power.com is irrelevant, for purposes of liability under the Act.

60.     Under CAN-SPAM, the body of an email cannot cure the material misrepresentations in the header information and, because CAN-SPAM sets the national standard, the body of an email cannot cure header violations under Section 17529.5(a)(2).

61.     Here, the Senders are not identified in the body of any of the emails. *Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407 (2014) does not apply because the neither the advertiser nor any Sender is identified in the body of the emails. The Senders are still unknown to the Plaintiff. Unlike in *Rosolowski,* Plaintiff has no information about the Senders. Named Defendants in this action are advertisers.

**Plaintiffs Sue for Statutory Liquidated Damages**

62.     Plaintiffs were injured as the result of receiving unlawful spams advertising Defendants' web sites. *See* Bus. & Prof. Code § 17529(d), (e), (g), (h).

63.     Business & Professions Code § 17529.5 does not require Plaintiffs to quantify their actual damages, or to allege or prove reliance on the advertisements contained in the spams.

64.     The California Legislature defines liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

65.     Plaintiffs are informed and believe and thereon allege that this figure is comparable with damages in other areas of consumer protection law, *e.g.,* $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b) and 47 U.S.C. §227 *et seq.*

66.     Plaintiffs' rightful and lawful assertion of the California Legislature's liquidated damages amount of $1,000 per email is necessary to further the Legislature's objective of protecting California residents from unlawful false and deceptive spam.

67.     Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to

**11**

1  effectively prevent unsolicited commercial email advertisements that are in violation of Business

2  & Professions Code § 17529.5.

3  68.    Even if Defendants had any practices and procedures to prevent advertising in unlawful

4  spam, such practices and procedures were not reasonably designed so as to be effective.

5  69.    Plaintiffs are informed and believe and thereon allege that the false and deceptive

6  elements of these spams represent willful acts, not clerical errors.

7  **F.    Advertisers Are Strictly Liable for Spams Sent By Senders**

8  70.    Advertisers are strictly liable for advertising in spams, regardless of whether the

9  advertiser knew that the spams were sent, and even if contracted third parties hit the Send button.

> There is a need to regulate the advertisers who use spam, as well as the actual
> spammers because the actual spammers can be difficult to track down due to
> some return addresses that show up on the display as "unknown" and many others
> being obvious fakes and they are often located offshore.

> The true beneficiaries of spam are the advertisers who benefit from the marketing
> derived from the advertisements.

Bus. & Prof. Code § 17529(j), (k).

71.    No one forced Defendants to outsource advertising to third party spammers, and in

*Hypertouch Inc. v. ValueClick Inc. et al*, the court held that advertisers are *strictly liable* for

advertising in false and deceptive spams, even if the spams were sent by third parties.

> *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a
> commercial e-mail advertisement" that contains any of the deceptive statements
> described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not
> limited to entities that actually send or initiate a deceptive commercial e-mail, but
> applies more broadly to any entity that advertises in those e-mails.

> Thus, like other California statutes prohibiting false or misleading business
> practices, the statute makes an entity *strictly liable* for advertising in a
> commercial e-mail that violates the substantive provisions described in section
> 17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails
> had been sent* or had any intent to deceive the recipient.

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added).   The court did not find that this

was an arbitrary requirement; rather, the court identified sound policy reasons behind the

Legislature's decision to create a strict liability statute:

> [I]mposing strict liability on the advertisers who benefit from (and are the
> ultimate cause of) deceptive e-mails, forces those entities to take a more active

role in supervising the complex web of affiliates who are promoting their products.

*Id.* at 829. *Hypertouch* was not an anomaly; it confirmed the general trend in anti-spam litigation in California and federal courts.

72. Despite suing Defendants and providing their attorneys copies of the emails, Plaintiff is still receiving this advertising, as recently as July 3, 2016.

## V.  CLASS ACTION ALLEGATIONS

73. Plaintiffs bring this class action for statutory liquidated damages on behalf of the following Class:

> All members of the LinkedIn group "C, Linux and Networking" who are California residents and who received unsolicited commercial emails sent from the domain linkedin.com advertising web sites at paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com with unauthorized sending domains and/or false or misrepresented information contained in or accompanying the email headers, within one year prior to the filing of this Action or after the filing of this Action.

74. Excluded from the Class are:

- Defendants' officers, directors, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.
- Any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

75. **Numerosity.** As of August 6, 2015, there were at least 19,268 in the LinkedIn "C, Linux and Networking" group. The proposed Class is so numerous that individual joinder of all its members is impractical.  Plaintiffs believes that members of the group are numerous and geographically dispersed across California, the United States and possibly the world.  A sizeable number of the group members reside in California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

76. **Commonality.** There is a well-defined community of interest in the questions of law and fact involved affecting the Class and these common questions predominate over any questions

that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

        a.      Did Class members receive unsolicited commercial emails advertising Keynetic's products at *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and getcashforsurveys.com*, meaning that they: 1) never gave direct consent to Keynetics to send them commercial email, and 2) had no preexisting or current business relationship with Keynetics or Click Sales?

        b.      Are Keynetics and Click Sales liable for the actions of affiliates who sent unlawful spams advertising *paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and/or *getcashforsurveys.com*?

        c.      Are the email headers materially deceptive?

        d.      Did the Defendants have permission to send unsolicited commercial email from LinkedIn's email servers?

        e.      Have Defendants established and implemented, with due care, practices and procedures reasonably designed to effectively prevent advertising in unlawful spam?

77.    **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendants' common course of conduct since they all received unlawful spams advertising *linkedinfluence.com, paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* and/or *getcashforsurveys.com*. All of the email advertising messages sent to all of the Class members are materially false and/or deceptive in the same manner for each of the Class members.

78.    **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiffs has no interests adverse to that of the Class.  Plaintiff has retained counsel with substantial experience in handling complex class action litigation and with prosecuting actions related to unlawful spamming.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.

79.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system

SECOND AMENDED CLASS ACTION COMPLAINT

1    of resolving the controversies engendered by Defendants' common course of conduct.  The class

2    action device allows a single court to provide the benefits of unitary adjudication, judicial

3    economy, and the fair and efficient handling of all class members' claims in a single forum.  The

4    conduct of this action as a class action conserves the resources of the parties and of the judicial

5    system and protects the rights of the class members.  Furthermore, for many, if not most, a class

6    action is the only feasible mechanism that allows an opportunity for legal redress and justice.

7    Adjudication of individual class members' claims with respect to the Defendants would, as a

8    practical matter, be dispositive of the interests of other members not parties to the adjudication,

9    and could substantially impair or impede the ability of other class members to protect their

10   interests.

## V.  COMMON ALLEGATIONS

80.    Each of the emails contains a link to a web page which belongs to Click Sales without
revealing to the recipient that it belongs to Click Sales.

81.    The aforementioned page belonging to Click Sales immediately directs the recipient to an
advertising web site located at one of the following domains: *linkedinfluence.com,*
*paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com,* or *getcashforsurveys.com.*

82.    To order from one of the aforementioned domain names, the email recipient is directed
back to Click Sales' web site to make payment.

## FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email,
California Business & Professions Code § 17529.5]
(Against All Defendants)**

83.    Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

84.    Defendants advertised in unlawful email messages sent to the email addresses of
Plaintiffs and other class members.

85.    Each and every email advertisement had materially false and deceptive information
contained in or accompanying the headers in violation of Business & Professions Code
§ 17529.5, due to the use of false and/or deceptive From Names.

86.     Each and every email advertisement contained a domain name, *linkedin.com,* in the headers, without the authorization of the domain name owner.

87.     Each and every email advertisement included an originating electronic mail address, domain name, and/or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations

88.     Plaintiffs were injured as the result of receiving unlawful spams advertising Defendants' web sites.  Bus. & Prof. Code § 17529(d), (e), (g), (h).

89.     The California Legislature set liquidated damages at $1,000 per email that violates the statute.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

90.     Defendants are not entitled to any reduction in liquidated damages because Defendants cannot demonstrate that they have reasonably effective systems in place to prevent the sending of unlawful spam in violation of the statute.

91.     Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Business & Professions Code § 17529.5(b)(1)(C).

92.     The attorneys' fees provision for a prevailing plaintiff is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5.  By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make an award of attorneys' fees appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## PRAYER FOR RELIEF

### (Jointly and Severally Against All Defendants)

93.     Wherefore, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

94.     Certification of the proposed Class and notice thereto to be paid by Keynetics Inc. and/or Click Sales Inc.;

95.     Adjudge and decree that Defendants have engaged in the conduct alleged herein;

96.     For liquidated damages of $1,000 per unlawful email message pursuant to Business & Professions Code § 17529.5(b)(1)(B)(ii);

97.     For attorneys' fees pursuant to Business & Professions Code § 17529.5(b)(1)(C) and/or California Code of Civil Procedure 1021.5;

98.     Appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not necessarily limited to an order enjoining Defendants and others acting in concert with them from continuing their unlawful policies and practices;

99.     For costs, and pre-judgment and post-judgment interest; and

100.    For any and all such other and further relief that this Court may deem just and proper.

AUDET & PARTNERS, LLP

Date:   July 11, 2016          BY:_____

Mark Burton
*Attorneys for Plaintiff and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

AUDET & PARTNERS, LLP

Date:   July 11, 2016          BY:_____

Mark Burton
*Attorneys for Plaintiff and the Proposed Class*

17

SECOND AMENDED CLASS ACTION COMPLAINT

# Exhibit A

From:    "Liana Christian" <groups-noreply@linkedin.com>
Subject: [New discussion] How a newbie banked $5K THIS WEEK...What Nobody Told You About
Date:    Sat, July 11, 2015 1:22 am
To:      "William Silverstein" <linkedin.com@▇▇▇▇▇▇>

   Groups

  C, Linux and
Networking

How a newbie banked $5K
THIS WEEK...What Nobody
Told You About

  Liana Christian
Assistant Manager...

https://lnkd.in/eMMdcNy ==>> It had changed
my life, i wish to share with you guys....

          Is this discussion
                  inappropriate? (Abusive,
                  offensive, spam, job) Flag »

Stop receiving email for each new
discussion

This email was intended for William Silverstein (Self
Employed). Learn why we included this.
If you need assistance or have questions, please contact
LinkedIn Customer Service.

© 2015, LinkedIn Corporation, 2029 Stierlin Ct. Mountain
View, CA 94043, USA

**Attachments:**

| cid: text-body | |
|---|---|
| Size: | 0.8 k |
| Type: | text/plain |