1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    WILLIAM SILVERSTEIN,                    Case No.  16-cv-00684-DMR

          Plaintiff,

8

          v.                                 **ORDER ON DEFENDANTS' MOTIONS
9                                            TO DISMISS PLAINTIFF'S SECOND
     KEYNETICS INC., et al.,                 AMENDED COMPLAINT**
10
          Defendants.                        Re: Dkt. Nos. 55, 57
11

12          Plaintiff William Silverstein brings this putative class action alleging violations of

13   California's restrictions on unsolicited commercial email.  The court previously dismissed

14   Plaintiff's first amended complaint ("FAC") on the ground that Plaintiff's claims were preempted

15   by federal law.  *Silverstein v. Keynetics Inc*., ---F. Supp. 3d---, 2016 WL 3479083, at *4 (N.D.

16   Cal. June 27, 2016).  Defendants 418 Media LLC ("418 Media) and Lewis Howes, and specially

17   appearing Defendants Keynetics, Inc. ("Keynetics") and Click Sales, Inc. ("Click Sales), now

18   separately move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2) to dismiss

19   Plaintiff's second amended complaint ("SAC").  [Docket Nos. 55 (418 Media & Howes's Mot.),

20   57 (Keynetics & Click Sales's Mot.).]  The court held a hearing on September 22, 2016.  For the

21   following reasons, the court dismisses Plaintiff's SAC because Plaintiff's claims for relief are

22   preempted by federal law.

23   **I.      BACKGROUND**

24          Plaintiff makes the following allegations in the SAC, all of which are taken as true for

25   purposes of this motion.[1]  Plaintiff is a member of the group "C, Linux and Networking Group" on

26   
     _____

27   [1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
     of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
28   (per curiam) (citation omitted).

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    LinkedIn, a professional networking website.  SAC ¶ 4.  Through his membership in that group,

2    he received unlawful commercial emails ("spam" emails) that came from fictitiously named

3    senders through the LinkedIn group email system.  The emails originated from the domain

4    "linkedin.com," even though non-party LinkedIn did not authorize the use of its domain and was

5    not the actual initiator of the emails.  *Id*. at ¶¶ 30, 49.

6         The bodies of the emails contain links to web pages at linkedinfluence.com,

7    paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and

8    getcashforsurveys.com.  *Id*. at ¶ 4.  Plaintiff alleges upon information and belief that these links

9    "go through clickbank.net," which is owned and operated by Click Sales, and that Click Sales is a

10   wholly owned subsidiary of Keynetics.  *Id*. at ¶¶ 6, 14.  He also alleges upon information and

11   belief that 418 Media owns the domain name linkedinfluence.com, and that Lewis Howes, an

12   individual, owns and operates 418 Media.  *Id*. at ¶¶ 7, 12.  Further, Plaintiff alleges upon

13   information and belief that Inspired Marketing, LLC ("Inspired Marketing") created and operates

14   linkedinfluence.com and that Keynetics sells Inspired Marketing's products at

15   linkedinfluence.com.  *Id*. at ¶¶ 9, 10.  Plaintiff alleges that Sean Malarkey owns and operates

16   Inspired Marketing.  *Id*. at ¶ 13.[2]

17        Plaintiff alleges that the text in the "from" name field in the email headers is "false and/or

18   deceptive," and that Defendants "insert[ed] a false name into the email header in an attempt to

19   trick the recipient into opening the email."  *Id*. at ¶¶ 33, 35, 38.  For example, the "from" names

20   include "Liana Christian," "Whitney Spence," "Ariella Rosales," and "Nona Paine," none of

21   which identify any real person associated with any defendant.  *Id*. at ¶¶ 37, 39.  Further, Plaintiff

22   alleges that the emails "claim to be from actual people" and that all of the false "from" names

23   deceive the emails' recipients "into believing that personal connection could be made instead of a

24   pitch for Defendants' products."  *Id*. at ¶¶ 42, 45, 46.  According to Plaintiff, the bodies of the

25   emails do not identify the senders of the emails.  *Id*. at ¶ 42.  Plaintiff alleges upon information

26   and belief that "there is no way to determine the Senders [of the emails] through WHOIS or

27

28   [2] Plaintiff added Defendants Inspired Marketing and Malarkey in the SAC.  Neither has appeared
     in this action.

2

1    through any other source other than Defendants and perhaps LinkedIn." *Id.* at ¶ 44.

2        Plaintiff attached an exemplar email to the SAC.  It contains the following email header

3    information:

4           From:       "Liana Christian" <groups-noreply@linkedin.com>
             Subject:     [New discussion] How a newbie banked $5K THIS
5                         WEEK…What Nobody Told You About
             Date:       Sat, July 11, 2015 1:22 am
6           To:         "William Silverstein" <linkedin.com@[redacted]>

7    *Id.* at ¶ 26, Ex. A.  The body of the email contains a web link.  *Id.*  Plaintiff received at least 103

8    spam emails from "July 6, 2015 to July 3, 2015 [sic]" advertising linkedinfluence.com,

9    paidsurveyauthority.com, takesurveysforcash.com, click4surveys.com, and

10   getcashforsurveys.com, all of which had false "from" names in their headers. *Id.* at ¶¶ 36, 37.

11       Plaintiff asserts one claim for relief for violation of California Business and Professions

12   Code section 17529.5, which prohibits certain unlawful activities related to commercial email

13   advertisements.  Defendants 418 Media, Howes, Keynetics, and Click Sales now move to dismiss.

14   **II.    LEGAL STANDARDS**

15       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

16   the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

17   When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all

18   of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

19   (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal

20   theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to

21   relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

22   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

23   2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual

24   content that allows the court to draw the reasonable inference that the defendant is liable for the

25   misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged

26   must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of

27   a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

28   *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.

United States District Court
Northern District of California

3

1    2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

2    2002).

3    **III.    DISCUSSION**

4        In their motions to dismiss the SAC, Defendants again argue that Plaintiff's claims are

5    preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing

6    Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7701-7713.  Additionally, Defendants 418 Media

7    and Howes move pursuant to Rule 12(b)(6) to dismiss the SAC on the grounds that it is not pled

8    with the requisite specificity and Plaintiff does not plead specific facts regarding Howes's liability.

9    Defendants Keynetics and Click Sales move pursuant to Rule 12(b)(6) for failure to state a claim

10   against Keynetics, and pursuant to Rule 12(b)(2) to dismiss Plaintiff's amended complaint for lack

11   of personal jurisdiction.

12       **A.    Preemption**

13       California Business and Professions Code section 17529.5 governs unsolicited commercial

14   email.  It provides that it is unlawful for a person or entity "to advertise in a commercial e-mail

15   advertisement either sent from California or sent to a California electronic mail address under any

16   of the following circumstances:"

17           (1) The e-mail advertisement contains or is accompanied by a third-
             party's domain name without the permission of the third party.
18

19           (2) The e-mail advertisement contains or is accompanied by
             falsified, misrepresented, or forged header information.[3]  This
             paragraph does not apply to truthful information used by a third
20           party who has been lawfully authorized by the advertiser to use that
             information.
21

22           (3) The e-mail advertisement has a subject line that a person knows
             would be likely to mislead a recipient, acting reasonably under the
             circumstances, about a material fact regarding the contents or
23           subject matter of the message.

24

25   ---

     [3] The California statute does not define the term "header information."  In *Kleffman v. Vonage
26   Holdings Corp.*, 49 Cal. 4th 334, 340 n.5 (2010), the California Supreme Court applied the CAN-
     SPAM Act's definition of header information, which is "the source, destination, and routing
27   information attached to an electronic mail message, including the originating domain name and
     originating electronic mail address, and any other information that appears in the line identifying,
28   or purporting to identify, a person initiating the message." (citing 15 U.S.C. § 7702(8)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Cal. Bus. & Prof. Code § 17529.5(a).

2       The CAN-SPAM Act contains an express preemption provision which provides as follows:

3           **(1) In general.** This chapter supersedes any statute, regulation, or
            rule of a State or political subdivision of a State that expressly

4           regulates the use of electronic mail to send commercial messages,
            *except* to the extent that any such statute, regulation, or rule

5           prohibits *falsity or deception* in any portion of a commercial
            electronic mail message or information attached thereto.

6
            **(2) State law not specific to electronic mail.** This chapter shall not
7           be construed to preempt the applicability of—

8               **(A)** State laws that are not specific to electronic mail,
                including State trespass, contract, or tort law; or

9
                **(B)** other State laws to the extent that those laws relate to
10              acts of fraud or computer crime.

11

12   15 U.S.C. § 7707(b) (emphasis added). The Ninth Circuit has interpreted the CAN-SPAM Act's

13   preemption clause as "broadly preempt[ing] state regulation of commercial e-mail with limited,

14   narrow exception. Congress carved out from preemption state laws that proscribe 'falsity or

15   deception' in commercial e-mail communications." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040,

16   1061 (9th Cir. 2009). In *Gordon*, the Ninth Circuit held that the CAN-SPAM Act's exception

17   from preemption for laws prohibiting "falsity" and "deception" refers to "'traditionally tortious or

18   wrongful conduct.'" *Id*. at 1062 (citing *Omega World Travel, Inc. v. Mummagraphics, Inc*., 469

19   F.3d 348, 354 (4th Cir. 2006)). Thus, in order to escape preemption, "the false or deceptive

20   information in a commercial email must be material." *Silverstein*, 2016 WL 3479083, at *4

21   (citing *Gordon*, 575 F.3d at 1062).

22       After interpreting the CAN-SPAM's preemption clause, the Ninth Circuit in *Gordon*

23   reviewed the district court's conclusion that the plaintiff's state law claim was preempted. The

24   plaintiff in *Gordon* asserted that the defendant violated state law by sending emails with header

25   information that did not clearly identify the defendant as the sender. Specifically, the defendant

26   sent emails using email addresses with domain names that did not clearly identify the defendant.

27   *Gordon*, 575 F.3d at 1063. The plaintiff argued that such emails violated state law because they

28   "misrepresent[ed] or obscure[d] the identity of the sender." *Id*. The Ninth Circuit found that the

plaintiff's claim "was for incomplete or less than comprehensive information regarding the [identity of the email] sender." *Id*. at 1064.  It concluded that such actions do not amount to "falsity and deception" under the CAN-SPAM Act because "[t]here is of course nothing inherently deceptive in [defendant's] use of fanciful domain names," and noted that the plaintiff could accurately identify the domain registrant by using a "reverse-look-up database." *Id.* at 1063-64. The Ninth Circuit also rejected the plaintiff's theory that "the only information that could be used in the 'from name' field that would not misrepresent is the name of the 'person or entity who actually sent the e-mail, or perhaps . . . the person or entity who hired the [sender] to send the email on their behalf.'" *Id*. at 1064.  It held that "[t]he CAN-SPAM Act does not impose such a requirement," and that "[t]o the extent such a content or labeling requirement may exist under state law, it is clearly subject to preemption." *Id*.

In this case, Plaintiff alleged in the FAC that the emails at issue violated section 17529.5(a)(1) because the emails were sent from the linkedin.com domain, even though LinkedIn did not authorize the use of its domain and was not the actual sender of the emails.  He further alleged the emails violated section 17529.5(a)(2) because the "from" names, e.g, "Liana Christian," are "fictitious and false" and "misrepresent[ed] who is advertising in the emails and who sent the emails." *Silverstein*, 2016 WL 3479083, at \*3, \*5.  The court found that Plaintiff's claim "amount[ed] to the same preempted allegations made in *Gordon*; i.e., that the header information is deceptive because it does not clearly identify either the sender or the entity advertising in the body of the email," and held that neither theory alleged a material falsity or deception that was sufficient to survive CAN-SPAM Act preemption. *Id*. at \*5-6.  The court discussed Plaintiff's concession that the headers did not "falsely or deceptively misrepresent the domain from which" they had traveled, since all of the emails had actually come from the linkedin.com domain. *Id*. at \*5.  It also noted that Plaintiff had not alleged that the header information "deceived him into believing that the email was not commercial in nature," observing that it was unlikely that Plaintiff could plausibly do so given the "clearly commercial subject line" of the email attached to the FAC. *Id*. at \*5 n.7.

In the SAC, Plaintiff again alleges that Defendants violated sections 17529.5(a)(1) and

1    17529.5(a)(2).  He alleges that Defendants violated section 17529.5(a)(1) because "LinkedIn did

2    not authorize any Defendant to use its service for the purpose of sending the unsolicited

3    commercial email at issue in this action," and adds a new allegation that Linkedin "was not a

4    Sender" of the emails.  SAC ¶¶ 30, 49.  As to section 17529.5(a)(2), Plaintiff alleges that

5    Defendants violated that provision because the email headers contain "false and/or deceptive" text

6    in the form of false "from" names, and that Defendants "insert[ed] a false name into the email

7    header in an attempt to trick the recipient into opening the email."  SAC ¶¶ 33, 38.  Plaintiff's new

8    theory is that by including false "from" names, the emails appear "to be from actual people." As

9    such, the emails violate section 17529.5(a)(2) "[b]ecause all of the From Names deceive recipients

10   into believing that personal connection could be made instead of a pitch for Defendants'

11   products."  SAC at ¶¶ 45, 46.

12          Plaintiff's new allegations essentially repackage his previous ones. They still do not

13   amount to material falsity or deception that is sufficient to avoid preemption.  Although Plaintiff

14   alleges that the email headers include false "from" names, those names are not materially

15   deceptive.  For example, he does not allege that the individuals listed in the "from" name fields

16   were actually known to him and that the email senders misappropriated or "spoofed" their

17   identities, distinguishing the facts of this case from *Hoang v. Reunion*, No. C-08-3518 MMC,

18   2010 WL 1340535, at \*6 (N.D. Cal. Mar. 31, 2010).  In *Hoang*, "each plaintiff received an e-mail

19   indicating the sender was an actual person known to such recipient, when, in fact, the e-mails were

20   sent by [the] defendant [advertiser]." *Id.*

21          Nor has Plaintiff plausibly alleged that the "from" names deceived him about the nature of

22   the email.  An email that appears to be sent by an unknown fellow member of a LinkedIn interest

23   group could potentially deceive the recipient into believing the communication was in furtherance

24   of a shared professional interest.  However, such is not the scenario here, since the allegedly false

25   "from" names were coupled with a clearly commercial subject line: "How a newbie banked $5K

26   THIS WEEK . . . What Nobody Told You About."  SAC Ex. A; *see also Silverstein*, 2016 WL

27   3479083, at \*5, n.7 (noting the unlikelihood that Plaintiff "could plausibly allege that he was

28   deceived" in light of the commercial subject line of the email attached to the FAC).  There is

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1   nothing about this subject line that suggests that a "personal connection could be made" as a result

2   of the email, or is otherwise deceptive.[4]  *See* SAC ¶ 46.  In sum, taken as a whole, the exemplar

3   email is not materially false or deceptive.  As in *Gordon*, Plaintiff's allegations in the SAC amount

4   to no more than "technical allegations" regarding the header information.  *See Gordon*, 575 F.3d at

5   1064.  Since the allegations in the SAC do not sufficiently allege that the email headers were

6   materially false or deceptive, they are accordingly preempted by the CAN-SPAM Act.

7           Plaintiff attempts to distinguish *Gordon* on the ground that the Ninth Circuit addressed

8   only the domain name portion of "from" names, whereas Plaintiff challenges false "from" or

9   sender names.  However, *Gordon* was not so limited.  While the Ninth Circuit held that the "use of

10  fanciful domain names" was not "inherently deceptive," the court concluded that the plaintiff's

11  claim that the emails failed to clearly identify the defendant as the sender was "'for, at best,

12  'incomplete' or less than comprehensive information' regarding the sender," and that "[s]uch

13  technical allegations regarding the header information [found] no basis in traditional tort theories."

14  *Gordon*, 575 F.3d at 1063-64.  In other words, actions challenging immaterial inaccuracies or

15  omissions "falter under the weight of federal preemption."  *See id.* at 1062, 1064.

16          Plaintiff also appears to argue that a violation of the CAN-SPAM Act is a "material

17  violation" of state law, and that he can escape federal preemption because he has pleaded a

18  material violation of the CAN-SPAM Act.  His only support for this argument is a 2006 complaint

19  filed by the Federal Trade Commission ("FTC") against a defendant-advertiser, *United States v.*

20  *Jumpstart Technologies, LLC*, Case No. 06-2079 MHP (N.D. Cal. Mar. 21, 2006), for violations

21

22  _____

23  [4] The subject line in the email's header makes clear that the email is commercial in nature.  That
    the email contains a commercial message is reiterated once the recipient opens the email, since the
24  body contains advertisements.  The fact that Plaintiff cannot identify who sent the advertisement
    does not render the header materially false or deceptive.  *See* Pl.'s Opp'n at 3, 7.

25
    Further, while Plaintiff now alleges that LinkedIn was not the "sender" of the emails, he does
26  not allege that the email headers "falsely or deceptively misrepresent the domain from which the
    emails actually traveled."  *Silverstein*, 2016 WL 3479083, at *5.  To the contrary, he admits that
27  "[a]ll of the spams at issue originated from the domain linkedin.com."  SAC ¶ 30.  The use of the
    linkedin.com domain in the emails in question is thus not materially false or deceptive.  *See id.*
28

8

of the CAN-SPAM Act.  According to Plaintiff, the FTC alleged in that case that "use of false From Names constitute a violation of 15 U.S.C. § 7704(a)(1) of the CAN-SPAM ACT," (opp'n to Keynetics/Click Sales Mot. at 6), and Plaintiff asserts that this conduct resulted in a signed consent decree.  *See United States v. Jumpstart Technologies, LLC*, Case No. 06-2079 MHP, Docket No. 4 (Mar. 23, 2006).  *Jumpstart Technologies* is inapposite.  First, the consent decree was a settlement agreement in which the defendant did not admit liability for the matters alleged the complaint.  *See id*. at 1-2.  Second, the facts of *Jumpstart* are readily distinguishable.  In that case, the FTC alleged that the emails in question deceived the recipients into believing that they were from an actual friend by including the email addresses of the recipients' friends in the "from" lines and including personal greetings in the subject lines of the emails.

In sum, Plaintiff's claims "relate to, at most, non-deceptive statements or omissions and a heightened content or labeling requirement."  *See Silverstein*, 2016 WL 3479083, at \*7 (quoting *Gordon*, 575 F. 3d at 1064)).  They are accordingly preempted by the CAN-SPAM Act.  Since Plaintiff has already been given an opportunity to amend the complaint to escape federal preemption, the SAC is dismissed with prejudice.[5]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part.  Plaintiff's SAC is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: December 29, 2016



Donna M. Ryu
United States Magistrate Judge

---

[5] Since the court dismisses the SAC with prejudice on federal preemption grounds, it need not reach Defendants' remaining arguments.